**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GERALD WALTEMYER,

    Plaintiff,

    v.

JO ANNE B. BARNHART, Commissioner of Social Security Administration,

    Defendant.

_____/

No. C 04-1605 PJH

**MEMORANDUM DECISION AND ORDER THEREON**[1]

Gerald Waltemyer ("Waltemyer") appeals the Commissioner's final decision denying his claim for disability benefits under 42 U.S.C. § 405(g). Having considered Waltemyer's motion for summary judgment and the Commissioner's motion for remand and having reviewed the administrative record and relevant authorities, this case is reversed and remanded to the Commissioner for further proceedings in accordance with this court's order.

**INTRODUCTION**

This case differs from a typical social security appeal because, here, the Commissioner concedes that remand is necessary, apparently for mistakes that were made at the administrative level.[2] The parties, however, disagree as to the scope of the remand. Waltemyer claims that this court should determine as a matter of law that he is disabled and that the remand should be for an award of benefits. The Commissioner, on the other hand, contends that this court should make no determination regarding Waltemyer's disability or entitlement to benefits, and that the remand should be for further development of evidence

---

[1] Pursuant to Civil Local Rule 7-13, this order may not be cited except as provided by Civil Local Rule 3-4(e).

[2] The Commissioner's papers are not clear regarding which errors she concedes the ALJ made in this case.

1  and testimony from a vocational expert to determine whether or not a disability exists.

2  **BACKGROUND**

3  Waltemyer applied for Social Security disability insurance benefits on August 16, 2001, alleging disability beginning on January 13, 2001.  The Social Security Administration denied his application initially and on reconsideration.  Waltemyer filed a request for hearing, which was held before an administrative law judge ("ALJ") on March 18, 2003.  The ALJ rendered an unfavorable decision on June 26, 2003, denying Waltemyer's application.  The Appeals Council denied review, and the ALJ's decision was affirmed on March 19, 2004.  Waltemyer filed this action on December 20, 2004.

Waltemyer was fifty-years old at the time of the hearing.  Administrative Record ("A.R.") 485.  He is married and has a college-aged daughter.  Waltemyer has an Associates degree in engineering.  A.R. 485.

Waltemyer has been unable to work since January 2001, alleging disability due to Chronic Fatigue Syndrome ("CFS")  A.R. 486.  Prior to that, he worked as a mechanical engineer, designing products and machines.  A.R. 486.  Most of his work was done on the computer, but he spent approximately ten to fifteen-percent of his time in a laboratory.  A.R. 486. According to the Vocational Expert ("VE"), Waltemyer performed at a level eight exertional level, which is one of the highest achievable.  A.R. 520.  Waltemyer worked as a full-time consultant between 1996 and 1997.  In 1997, due to his CFS symptoms, Waltemyer shifted to part-time work.  A.R. 487.  His part-time schedule consisted of a total of three days a week, with one of those days at home.  A.R. 487.  As Waltemyer's CFS progressed, he was unable to fulfill his part-time schedule, and eventually stopped working.  A.R. 486, 488-489.

Waltemyer first noticed CFS symptoms in 1984.  A.R. 491.  Although Waltemyer sought treatment from a number of physicians, his symptoms worsened.  A.R. 491.  In 1989, an internal medicine specialist diagnosed Waltemyer with CFS.  A.R. 491.  His health improved between 1989 and 1991.  A.R. 491.  He attributes this improvement to moving out

1 of Southern California to Sea Ranch, California. A.R. 491. By 1991, Waltemyer testified that
2 his physical and mental capabilities were eighty to eighty-five percent. A.R. 491.

3 However, in late 1996, Waltemyer noticed a recurrence of the CFS symptoms. A.R.
4 492. Waltemyer testified that his CFS had four distinct characteristics. First, he had
5 constantly recurring flu-like feelings, throat and sinus inflammation, gastrointestinal
6 disturbances, and pain. A.R. 493. Second, Waltemyer experienced fatigue and generalized
7 exhaustion, which was present with or without his flu-like symptoms. A.R. 493. Although his
8 fatigue "lapsed in and out," when it did occur, it would typically last several days. A.R. 493.
9 His fatigue ran a spectrum from very good days, when he was "tired and did not feel like
10 doing anything," to very bad days, when he was "too exhausted to even get out of bed." A.R.
11 494. Third, Waltemyer experienced insomnia. A.R. 494. His insomnia also ran a spectrum,
12 when on a good day, despite laying in bed for twelve hours, Waltemyer would sleep five to six
13 hours. A.R. 494. On his bad days, Waltemyer could go days without sleeping. A.R. 494.
14 Fourth, Waltemyer experienced "brain fog," which included poor memory and concentration.
15 A.R. 495. Again, Waltemyer had good days and bad days. A.R. 495.

16 Most of Waltemyer's symptoms have not changed since 2001. A.R. 496. Although
17 Waltemyer's gastrointestinal symptoms have been controlled by drug therapy, his insomnia
18 has continually worsened, and he has been unable to alleviate it. A.R. 496.

19 At the hearing, Waltemyer described his daily activities. Assuming he has been
20 taking care of himself, his daily routine begins after lying in bed for twelve hours. A.R. 498.
21 He spends one and a half hours getting dressed and eating breakfast. A.R. 498. In the
22 morning, he tries to accomplish one task, such as cleaning the house or washing the car.
23 A.R. 498. Between morning and afternoon, he lies down and rests. A.R. 498. In the
24 afternoon, he tries to go to the pool or sauna. A.R. 499. Afterwards, he again lies down and
25 rests. A.R. 499. For dinner, he helps his wife in the kitchen. A.R. 499. His day is complete
26 by 6:00 pm. A.R. 499. His reading is limited to a "little bit" of a newspaper and some
27 magazines. A.R. 499. He also tries to use the computer for research or email. A.R. 500.
28

1   Waltemyer testified that his wife has also been afflicted with CFS since 1988, and that
2 she began receiving Social Security Disability benefits in 1994. A.R. 510. The two divide
3 the household chores and share in cooking meals. A.R. 512. Waltemyer cleans and does
4 the grocery shopping. A.R. 512. However, most of their food and other items are mail-
5 ordered. A.R. 512.

6   In August 1998, Waltemyer began seeing his treating physician, Dr. Madill. A.R. 312.
7 Dr. Madill diagnosed Waltemyer with CFS and a sleep disorder[3]. A.R. 347. Dr. Madill later
8 diagnosed Waltemyer with lymphadenopathy, allergic rhinitis, GI tract allergies, and
9 fybromyalagia. A.R. 305, 324, 337, 346. For several years, Dr. Madill prescribed numerous
10 treatments for Waltemyer's CFS; however, none were successful. A.R. 336.

## LEGAL STANDARD

12   To qualify for disability benefits under the Social Security Act, a claimant must
13 establish that she was unable "to engage in any substantial gainful activity by reason of any
14 medically determinable physical or mental impairment which . . . has lasted or can be
15 expected to last for a continuous period of not less than 12 months." 42 U.S.C. §
16 416(i)(1)(A). The claimant bears the burden of proving that she suffers from a disability. See
17 Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).

18   Regulations promulgated by the Commissioner set forth a five-step sequential
19 analysis to be used by an ALJ in determining whether a claimant is disabled. See 20 C.F.R.
20 § 404.1520. The inquiry is terminated at the stage where a decision can be made that the
21 claimant is or is not disabled. See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990). At
22 Steps One through Four, a claimant must demonstrate a severe impairment and an inability
23 to perform past work; the Commissioner bears the burden only if the sequential evaluation
24 process proceeds to Step Five. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987);
25 Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).

---

27   [3]This was the second CFS diagnosis. The first was made by an unnamed physician in 1989.

4

At Step One, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled and the claim is denied.  If the ALJ determines that the claimant is not currently engaged in substantial gainful activity," Step Two requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities ."  20 C.F.R. § 404.1520(c).  At Step Three, the ALJ compares the claimant's impairment to a listing of impairments.  If a claimant's impairment meets or equals an impairment in the listing, a disability is presumed and benefits awarded.  See 20 C.F.R. § 404.1520(d).  The ALJ proceeds to Step Four only if the claimant's condition does not meet the listing at Step Three.  At Step Four, the ALJ considers whether the claimant has sufficient "residual functional capacity" ("RFC") to perform her past work despite the impairment and/or limitations.  20 C.F.R. § 404.1520(e).  If the claimant has sufficient RFC, benefits are denied.  If not, the burden shifts to the Commissioner at Step Five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and work experience."  20 C.F.R. § 404.1520(f).

CFS is a "systemic disorder consisting of a complex of *symptoms* that may vary in incidence, duration, and severity."  Social Security Ruling 99-2p.  Normally, at Step Two, a claimant has the burden of establishing a medically determinable impairment via medical evidence consisting of medical signs, symptoms and laboratory findings, not only by an individual's statement of symptoms Id.  Because of the symptomatic nature of CFS, the Social Security Administration has provided examples of medical signs or laboratory findings that establish the existence of a medically determinable impairment (e.g. palpably swollen or tender lymph nodes on physical examination, or nonexudative pharyngitis.)  Id.

In general, CFS claims follow the same sequential evaluation process as any other impairment.  However, once a CFS claimant establishes the existence of a medically

5

determinable impairment, the ALJ should conclude that the claimant has an impairment that could reasonably be expected to produce the claimant's symptoms associated with CFS. Id. The ALJ must then proceed to evaluate the intensity and persistence of the symptoms. Id.

**ALJ'S FINDINGS**

Here, the ALJ determined that Waltemyer was able to return to his past relevant work ("PRW") at Step Four, and thus, was not disabled. A.R. 24. The ALJ concluded at Step One that Waltemyer had not engaged in any substantial gainful activity since the disability onset date. A.R. 18. At Step Two, the ALJ found Waltemyer's CFS to be severe. A.R. 20. However, at Step Three, Waltemyer's CFS did not meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4. A.R. 20. The ALJ then moved forward to Step Four where he ruled that Waltemyer was not disabled. A.R. 24.

The ALJ's Step Four findings were primarily based on his disbelief of Waltemyer's testimony and subjective complaints. A.R. 20. The ALJ found Waltemyer's testimony regarding the intensity, persistence and limiting effects of his impairments "exaggerated when taken as a whole." A.R. 20. He also stated that Waltemyer's medical evidence did not provide "much objective support for [Waltemyer's] complaints," pursuant to 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p. A.R. 20. He considered Waltemyer's daily activities, which he concluded "replicated [the physical and mental capabilities] necessary for obtaining and maintaining employment." A.R. 20. Moreover, the ALJ stated that "it strain[ed] the credibility to find both a husband and wife suffering from CFS, which is not a universally accepted diagnosis in the medical community." A.R. 22. The ALJ found the location of the Waltemyers' home in Sea Ranch, far from medical treatment facilities, an unusual choice for individuals with serious health problems. A.R. 22.

The ALJ also discredited Dr. Madill's testimony and lay witness letters written on Waltemyer's behalf. A.R. 22, 23. As to Dr. Madill, the ALJ did not give his opinion controlling weight because Dr. Madill's diagnosis was based entirely on Waltemyer's subjective

6

1    complaints and did not contain findings pursuant to Social Security Ruling 99-2p[4]. A.R. 23.
2    Additionally, the ALJ found that Dr. Madill's treating notes were inconsistent with the degree
3    of severity indicated by his medical source statement. A.R. 23. He mentioned that Dr.
4    Madill's notes regarding Waltemyer's degree of severity were the same both before and after
5    Waltemyer stopped working. A.R. 23. The ALJ further explained that Dr. Madill had two
6    conflicts of interest which would motivate him to be an "advocate and sympathetic to
7    [Waltemyer's] totally subjective complaints." A.R. 23. First, the ALJ opined that as
8    Waltemyer's treating physician, Dr. Madill wanted to maintain a client relationship with
9    Waltemyer, and therefore would not tell Waltemyer that he was "imagining his symptoms."
10   A.R. 23. Second, Dr. Madill had an "always present financial incentive to have a patient
11   covered by Medicare or Medi-Cal rather than treating a totally uninsured claimant." A.R. 23.

12         Based on his opinion of Dr. Madill's credibility, the ALJ gave greater weight to Dr.
13   Kongchigeri's[5] opinion that Waltemyer could work without limitations during an eight-hour
14   workday. Dr. Kongchigeri also opined that while Waltemyer had some environmental
15   limitations, he did not have any physical limitations which would impede his ability to work.

16         As for the lay witnesses, the ALJ discredited letters from Waltemyer's wife, daughter
17   and parents. A.R. 22. The ALJ stated that Waltemyer's daughter's letter contradicted
18   Waltemyer's testimony and the record. A.R. 22. She claimed that she never knew a father
19   who "was not immobilized by his illness," however, the ALJ noted that "if she was twenty in
20   2002, she would have had several years to watch [her father] work full time. . . and build his
21   own home at Sea Ranch." A.R. 22. The ALJ discounted Waltemyers' parents' letters
22   because they had not seen their son since 1988, and relied on self-reports of his condition.
23   A.R. 22. The ALJ also found it "less than forthcoming and candid" that neither Waltemyer, his

---

[4] Social Security Ruling 99-2p provides examples of medical signs and laboratory findings sufficient to establish the existence of a medically determinable impairment in individual's who have CFS.

[5] The Department of Disability Determination Services referred Waltemyer to see Dr. Kongchigeri for an internal medicine consultative evaluation.

7

1 wife, nor daughter mentioned that his wife had been disabled with CFS since 1994. A.R. 22.

2 Given that the VE testified that Waltemyer would still be able to perform his part-time
3 PRW[6], and that the ALJ discredited most of Waltemyer's evidence, the ALJ found Waltemyer
4 not disabled, at Step Four. A.R. 24.

## DISCUSSION

6 In his motion for summary judgment, Waltemyer raised four issues, including that: (1)
7 he was denied a fair hearing based on the ALJ's misunderstanding or scepticism regarding
8 CFS; (2) the ALJ erred in rejecting Waltemyer's testimony; (3) the ALJ erred when he failed
9 to include Waltemyer's fatigue in his hypotheticals to the vocational expert; and (4) the ALJ
10 made the same errors as the district court in a case subsequently reversed by the Ninth
11 Circuit.

12 As noted, the Commissioner concedes that remand is appropriate, but does not
13 specify the grounds that necessitate remand. At a minimum, though, it appears that the
14 Commissioner concedes that the ALJ erred in rejecting Waltemyer's and his treating
15 physician's testimony and opinions, because she asserts that on remand the ALJ should be
16 required to "give further consideration to Plaintiff's alleged impairments." It also appears that
17 the Commissioner concedes that the ALJ's hypotheticals to the vocational expert were
18 erroneous since the Commissioner asserts that on remand, the "ALJ will be instructed to call
19 a vocational expert." Given these apparent concessions, Waltemyer's first issue, which
20 concerns the ALJ's alleged bias against CFS and the process associated with the first
21 hearing, is moot. Any defects will be cured by further proceedings, to which the
22 Commissioner has agreed.

23 The fourth issue raised by Waltemyer – that this case is similar to Reddick v. Chater,
24 157 F.3d 715 (9th Cir. 1998) – concerns the appropriate remedy where an ALJ errs in his
25 characterization and treatment of a claimant's CFS, and is discussed below.

---

[6]The VE, however, stated that "because of the skill level [Waltemyer] was performing at, I would suggest [that] . . . even a fifteen percent limitation would eliminate [Waltemyer's] PRW." A.R. 520.

8

**Remand v. Award of Benefits**

If the court sets aside the ALJ's decision, it has discretion to either remand for further proceedings or award benefits. Reddick, 157 F.3d at 728 (citing Varney v. Sec'y of HHS, 859 F.2d 1396, 1399 (9th Cir. 1988)). Remand for further proceedings is appropriate if enhancement of the record would be useful. However, where the record has been fully developed and further proceedings would serve no useful purpose, the court should remand for immediate award of benefits. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996); Varney, 859 F.2d at 1399)).

Waltemyer contends that the ALJ's errors in this case are "nearly identical" to those made by the ALJ in *Reddick*, where the Ninth Circuit ultimately determined that remand was unnecessary and awarded benefits. The claimant in Reddick, like Waltemyer, suffered from CFS. The ALJ in that case also denied the claimant benefits at Step Four. Reddick, 157 F.3d at 719. Like Waltemyer, the ALJ there found that the claimant lacked credibility based on her daily activities, including her ability to do housework, exercise and take trips. Id. at 721. He discounted the claimant's treating and examining physicians' testimony because he found that their diagnoses were based on her non-credible subjective complaints and were biased. Id. at 725-726. At the claimant's hearing in that case, the VE testified that if the ALJ credited her testimony concerning her fatigue, she would be unable to perform her past work. Id. at 729.

The Ninth Circuit reversed the district court's affirmation of the ALJ's decision, finding that (1) the ALJ did not provide satisfactory reasons for discounting Reddick's credibility; Id. at 722; (2) the ALJ failed to take into account Reddick's persistent fatigue in evaluating her RFC; Id. at 724; and (3) the ALJ failed to provide clear, convincing, specific or legitimate reasons for rejecting Reddick's treating and examining physicians' testimony. Id. at 725.

Contrary to the ALJ's determination, the Ninth Circuit determined, in conducting a Step Four analysis, that the Reddick claimant was unable to return to her past work as a

1  payroll clerk.  See id. at 728.  Therefore, the only remaining issue was at Step Five: whether
2  the claimant was able to perform other work that existed in significant numbers in the national
3  economy.  Id. at 728-29.

4  The Reddick court then noted that "[t]he final question for us to resolve is whether to
5  remand for further proceedings or for an award of benefits."  Id. at 729.  The court concluded
6  that remand for further proceedings was unnecessary "because it [was] clear from the
7  administrative record that claimant is entitled to benefits."  Id.  In support, the court noted that
8  the only unresolved issue was at Step Five, and that the vocational expert had indeed already
9  provided the necessary testimony on the issue at Step Five.  Id. at 729 (noting that "[a]t
10 claimant's hearing, . . . the [vocational] expert testified that if claimant's testimony were
11 credited concerning her fatigue, . . . she would be unable to perform her past work or any
12 other work.").

13 Waltemyer analogizes his case with the claimant's in Reddick, and argues that an
14 award of benefits is appropriate.  Waltemyer is correct that this case is similar to Reddick
15 because it appears, based on the Commissioner's remand concession, that the ALJ did not
16 provide satisfactory reasons for discounting (1) Waltemyer's credibility and his testimony
17 regarding his persistent fatigue; and (2) his treating physician's opinions on Waltemyer's
18 condition, and (3) the effect of Waltemyer's symptoms, including his fatigue, on his ability to
19 return to his past work.

20 However, this case differs from Reddick in a very significant respect.  Here, the ALJ
21 posed improper hypotheticals to the VE.  As Waltemyer himself argues, the ALJ failed to
22 include Waltemyer's fatigue in his hypotheticals to the VE at Steps Four and Five.  Therefore,
23 contrary to the VE's opinions in Reddick, the VE's opinions here as to Waltemyer's abilities
24 at Steps Four and Five are flawed based on the ALJ's erroneous hypotheticals.

25 Instead, this case is more akin to Harman v. Apfel, in which the Ninth Circuit found that
26 remand for further proceedings was necessary.  211 F.3d 1172 (9th Cir. 2000).  Like
27 Harman, here, "there was no testimony from the vocational expert that the limitations found by
28

10

1 [Waltemyer's treating physician and testified to by Waltemyer] would render [him] unable to
2 engage in any work." Id. at 1180. "In cases where the testimony of the vocational expert has
3 failed to address a claimant's limitations as established by improperly discredited evidence,
4 [the Ninth Circuit] ha[s] consistently remanded for further proceedings rather than payment of
5 benefits." Id.

## CONCLUSION

Although the court concludes that remand for further proceedings is warranted, the Commissioner's request for further proceedings to update the medical records, and to essentially reconsider Waltemyer's disability in its entirety, is too broad. Instead, the scope of remand is more appropriately limited to correcting the conceded errors. The ALJ should recall the VE, and provide hypotheticals to the VE which account for the limitations attested to by Waltemyer and his treating physician. Based on the corrected hypotheticals, the VE shall render an opinion with respect to Waltemyer's abilities at Steps Four and Five. Once a corrected VE opinion is rendered, the record will be complete for the ALJ to make the ultimate disability determination.

For these reasons, Waltemyer's motion for summary judgment and/or remand is GRANTED IN PART and DENIED IN PART. The Commissioner's motion for remand is GRANTED IN PART and DENIED IN PART.

This order fully adjudicates the motions listed at Nos.16 and 20 of the clerk's docket for this case. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October___, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge